[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Ames v. Crestwood Local School Dist. Bd. of Edn.*, Slip Opinion No. 2024-Ohio-4889.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2024-OHIO-4889

THE STATE EX REL. AMES, APPELLANT, *v.* CRESTWOOD LOCAL SCHOOL DISTRICT BOARD OF EDUCATION ET AL., APPELLEES.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Ames v. Crestwood Local School Dist. Bd. of Edn.*, Slip Opinion No. 2024-Ohio-4889.]

*Public-records requests—School-district surveys—Aggregated results of completed mental-health surveys document school district's function, policies, and operations and are therefore public records—Court of appeals' judgment denying writ of mandamus reversed and cause remanded.*

(No. 2023-1549—Submitted August 13, 2024—Decided October 11, 2024.)

APPEAL from the Court of Appeals for Portage County, No. 2023-P-0014, 2023-Ohio-4371.

_____

The per curiam opinion below was joined by KENNEDY, C.J., and DEWINE, DONNELLY, STEWART, BRUNNER, and DETERS, JJ. FISCHER, J., dissented.

**Per Curiam.**

{¶ 1} Appellant, Brian M. Ames, appeals the judgment of the Eleventh District Court of Appeals denying his petition for a writ of mandamus under the Public Records Act, R.C. 149.43. Ames sought a writ compelling appellees, the Crestwood Local School District Board of Education and the treasurer of the school district (collectively, "the board"), to produce certain public records in its possession. The Eleventh District held that the documents sought were not public records, and it denied Ames's petition. Because we conclude that the documents that Ames requested are public records, we reverse the Eleventh District's judgment and remand the case to that court with instructions to grant the writ of mandamus and to consider whether Ames is entitled to statutory damages and court costs.

## I. FACTS AND PROCEDURAL HISTORY

### A. The Survey Results

{¶ 2} In spring 2022, the athletic director of the school district sent a mental-health survey to district staff. The board did not authorize the survey to be conducted, but the superintendent allowed the athletic director to circulate it.

{¶ 3} The survey is entitled "Mental Health PD Survey." It states, "With this data, Crestwood Local Schools intends to recognize areas of concern & improvement, [to] acknowledge individuals' anonymous statements and/or opinions, and to implement strategies that can be utilized by both staff and students to reduce the feeling of 'burnout' and increase Mental Health-Wellbeing."

{¶ 4} The survey asked a series of questions about the recipients' mental health, including what negatively influences their mental health at work, what they do to positively influence their mental health, and what ideas or actions might improve mental health in the district or their building. The survey stated that it did not collect respondents' names or email addresses.

2

## B. The Records Request

**{¶ 5}** In April 2023, Ames sent an email to the board requesting "the records documenting the results of the public health survey" that the school district had conducted using the mental-health survey form that Ames had attached. The school district's treasurer, who is also its records custodian, responded, asserting that the requested survey results do not fall within the definition of public records. She claimed that the survey results are personal to the surveyed individuals and "were not relied upon by the board in taking any action." The treasurer thus declined to produce the survey results.

## C. This Mandamus Action

**{¶ 6}** Ames filed this mandamus action in the Eleventh District pursuant to R.C. 149.43(C)(1)(b). The board filed a motion for summary judgment, and Ames filed a cross-motion for summary judgment.

**{¶ 7}** In support of its motion, the board filed affidavits from the district's treasurer, the district's superintendent, and the president of the district's school board. According to the treasurer, 60 out of approximately 210 district employees responded to the survey. The treasurer attested that she did not use or rely on the survey results, because—given the small number of respondents—the survey results "do not accurately represent the staff population." The superintendent also attested that no decision was made and that no action was taken by the school board or any district employee based on the survey results. The president of the school board attested similarly.

**{¶ 8}** The treasurer averred that because the survey results have not been used or relied on to take any action or make any decision, they are not records "that [she] would retain for the Board as a District record in the normal course of [her] duties." Nevertheless, she had the survey results in her possession. The board filed them under seal with the Eleventh District after it was ordered to do so.

{¶ 9} The documents filed under seal consist of the survey and slideshow slides presenting the aggregated responses to each question in chart or list form. The results appear to be grouped by school and do not contain any names or other identifying information of the respondents.

{¶ 10} After inspecting the survey results in camera, the Eleventh District, in a two-to-one decision, granted the board's motion for summary judgment and denied Ames's motion for summary judgment. The appellate court held: "Since the school district did not conduct any business based on the survey results, it did not 'utilize[ ]' the survey results 'to carry out its duties and responsibilities . . . .' " (Brackets added in *Ames*.) 2023-Ohio-4371, ¶ 31 (11th Dist.), quoting *State ex rel. Mazzaro v. Ferguson*, 49 Ohio St.3d 37, 39 (1990). The Eleventh District thus held that the survey results did not meet the definition of "records" in R.C. 149.011(G). 2023-Ohio-4371, at ¶ 31 (11th Dist.). Additionally, citing *State ex rel. Beacon Journal Publishing Co. v. Bond*, 2002-Ohio-7117, ¶ 11, the Eleventh District concluded that the survey results "would not ensure the accountability of the school district or shed light on the school district's performance of its statutory duties." 2023-Ohio-4371 at ¶ 31 (11th Dist.). One judge dissented and would have granted summary judgment in favor of Ames. *Id*. at ¶ 52 (Lynch, J., dissenting).

{¶ 11} Ames appealed the Eleventh District's judgment as of right.

## II. ANALYSIS

{¶ 12} "This court reviews de novo a court of appeals' grant of summary judgment in a mandamus action." *State ex rel. Ames v. Portage Cty. Bd. of Commrs.*, 2021-Ohio-2374, ¶ 11. Summary judgment shall be granted if all the properly submitted evidence "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Civ.R. 56(C).

{¶ 13} Mandamus is an appropriate remedy to compel compliance with R.C. 149.43. *State ex rel. Physicians Commt. for Responsible Medicine v. Ohio*

4

*State Univ. Bd. of Trustees*, 2006-Ohio-903, ¶ 6; R.C. 149.43(C)(1)(b). To obtain a writ of mandamus, "the requester must prove by clear and convincing evidence a clear legal right to the record and a corresponding clear legal duty on the part of the respondent to provide it." *State ex rel. Griffin v. Sehlmeyer*, 2021-Ohio-1419, ¶ 10.

{¶ 14} The definition of a "public record" appears in R.C. 149.43(A)(1): "'Public record' means records kept by any public office, including, but not limited to, . . . school district units . . . ." R.C. 149.011(G) defines "records" as "[1] any document, device, or item, regardless of physical form or characteristic, including an electronic record . . . , [2] created or received by or coming under the jurisdiction of any public office of the state or its political subdivisions, [3] which serves to document the organization, functions, policies, decisions, procedures, operations, or other activities of the office." (Bracketed numbers added.)

{¶ 15} In this case, the board does not argue that the survey results were not in its possession. Indeed, it is apparent that the board was in possession of the survey results because the board submitted them to the Eleventh District for in camera review. Therefore, the survey results were "kept by" the board, as required by R.C. 149.43(A)(1).

{¶ 16} Regarding the three elements of a record contained in R.C. 149.011(G), the Eleventh District correctly determined that the first two elements are satisfied—which the school board does not contest. However, the board argues that the survey results do not meet the third element.

{¶ 17} Although the board argues that it did not "use" the results of the survey after they were received, the survey was sent (with the superintendent's permission) to employees about work-related matters and the district retained the survey results. The survey results are not merely about the employees' general mental health; they document employees' responses to inquiries about how their mental health is negatively affected by the workplace and how well the school district or individual schools support the employees.

**{¶ 18}** The survey results also shed light on the school district's performance, at least to some degree. In *Bond*, one of the reasons this court concluded that answers to a jury questionnaire were not public records was because the disclosure of the information "does little to ensure the accountability of government or shed light on the trial court's performance of its statutory duties." 2002-Ohio-7117 at ¶ 11; *see also State ex rel. Dispatch Printing Co. v. Johnson*, 2005-Ohio-4384, ¶ 52 (home addresses of employees kept by office as contact information used as a matter of administrative convenience are not public records in part because their release would not shed light on government conduct). Citing *Bond*, the Eleventh District determined that disclosure of the survey results "would not ensure the accountability of the school district or shed light on the school district's performance of its statutory duties." 2023-Ohio-4371 at ¶ 31 (11th Dist.). However, the responses to questions five and six of the survey, which respectively ask what types of things negatively influence employees' mental health and why, do shed light on the school district's performance and likely aid in the school district's accountability to its employees and the public. Therefore, the survey results document the functions, policies, and operations of the school district.

**{¶ 19}** Furthermore, the board admits that the survey itself was used by the district, and it would not object to providing the survey (as distinct from the responses) to Ames. The board thus appears to admit that the survey is a public record. Additionally, the survey results in the board's possession are responsive to the survey. Accordingly, this case is distinguishable from cases in which a public office's employees discuss matters unrelated to the office. *See, e.g.*, *State ex rel. Wilson-Simmons v. Lake Cty. Sheriff's Dept.*, 82 Ohio St.3d 37, 41 (1998) (racist email between coworkers was not a record, because it did not document the organization, functions, policies, decisions, procedures, operations, or other activities of the office).

**{¶ 20}** In support of its conclusion that the survey results are not records because they were not used or relied on by the school district, the Eleventh District cited *State ex rel. Beacon Journal Publishing Co. v. Whitmore*, 1998-Ohio-180, and *State ex rel. Cincinnati Enquirer v. Ronan*, 2010-Ohio-5680. 2023-Ohio-4371 at ¶ 23, 29 (11th Dist.). The documents at issue in both those cases were received from outside the public office instead of being generated within it. In both *Ronan* and *Whitmore*, we noted that the definition of "records" in R.C. 149.011(G) includes any document a governmental unit uses to carry out its duties and responsibilities. *See Ronan* at ¶ 11; *Whitmore* at ¶ 11. But that formulation served to illustrate an aspect of the definition of "records" in R.C. 149.011(G) rather than to restrict it. Because the survey results in the board's possession fit within the definition of "records" in R.C. 149.011(G), the school district did not also need to use them in some way for them to become records, unlike the records in *Whitmore* and *Ronan*.

**{¶ 21}** The survey results fit within the definition of "records" and "public record" set forth in R.C. 149.011(G) and 149.43(A)(1). The survey and the survey results are communications between employees that document the function, policies, and operations of the school district. Therefore, the Eleventh District erred in concluding that the survey results are not public records.

### III. CONCLUSION

**{¶ 22}** As explained above, the survey results are public records. We therefore reverse the Eleventh District Court of Appeals' judgment and remand this case to that court with instructions to (1) issue a writ of mandamus ordering the board to produce records responsive to Ames's public-records request and (2) consider whether Ames is entitled to statutory damages and court costs.

Judgment reversed
and cause remanded.

_____

Brian M. Ames, pro se.

Weston Hurd, L.L.P., Sara Ravas Cooper, Eric J. Johnson, and Peter T. Zawadski, for appellees.

_____